**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| SIERRA CLUB,<br><br>  *Plaintiff*,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, ET AL.,<br><br>  *Defendants*,<br><br>and<br><br>KINDER MORGAN TEXAS PIPELINE LLC,<br>AND PERMIAN HIGHWAY PIPELINE, LLC,<br><br>  *Intervenor-Defendants.* | Case No. 1:20-cv-00460-RP |

**INTERVENOR-DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
SUPPLEMENTAL DECLARATIONS**

Intervenor-Defendants Kinder Morgan Texas Pipeline LLC and Permian Highway Pipeline, LLC (collectively, "PHP") file this response in opposition to Plaintiff's Motion for Leave to File Supplemental Declarations, Dkt. 40. The Court should deny the Motion for Leave because the supplemental declarations it seeks to file are not necessary to "correct the record," untimely, and irrelevant to Plaintiff's Motion for Preliminary Injunction ("PI Motion").

Plaintiff's PI Motion asks the Court to stay the Clean Water Act verifications issued by the U.S. Army Corps of Engineers ("Corps") for the Permian Highway Pipeline ("Pipeline") and "enjoin[ ] all dredge and fill and any other ground disturbing activities in the Corps' Action Areas for the project." PI Motion at 1, Dkt. 10. That motion was fully briefed on July 17, 2020 and argued on July 31, 2020 at the PI hearing. *See* Dkts. 29, 30, 33, 39. Plaintiff now submits additional declarations that purport to offer facts different from those represented by undersigned counsel at that hearing, in an apparent attempt to address defects in its case and bolster its claims of imminent irreparable harm. For several reasons explained below, Plaintiff is wrong that PHP's representations were incorrect—PHP submits the attached exhibits so provide the Court complete information regarding the event Plaintiff incorrectly characterizes. Further, Plaintiff was in possession of all of this information well before the hearing and had every chance to submit it to the Court or raise it in the course of argument when PHP would have had a timely opportunity to address Plaintiff's claims. Plaintiff did not do so.

First, Plaintiff is wrong that PHP did not accurately represent the horizontal directional drilling ("HDD") at the Pedernales River. At Plaintiff's request, counsel for PHP agreed to update the Court on the status of the HDD activity at the Pedernales in the hearing and, accordingly, represented that the HDD was ongoing and proceeding as anticipated. Counsel stated that the HDD pilot hole been completed without any incident of the type that occurred under the Blanco River. This is an accurate statement. The three small inadvertent returns that occurred on July 25 at the Pedernales HDD site and that are the subject of Motion for Leave and Plaintiff's declarations are not like the Blanco River

HDD incident. These inadvertent returns totalled 90 gallons of drilling fluid, which pooled on the ground surface and did not result in any downhole loss of fluid as in the Blanco River HDD incident. *See* Second Declaration of Derek Brammer, ¶¶ 6, 8, attached as Exhibit A. At the hearing, counsel also accurately explained that, based on the geotechnical data gathered, the Pedernales HDD would not require drilling through bedrock where karst features could be located (again in contrast with the Blanco River HDD). *See* Second Brammer Decl., ¶ 12, Ex. A; *see also* First Brammer Declaration, ¶ 30, Dkt. 30-8.

Plaintiff is also incorrect that the July 25 inadvertent returns "are directly relevant to the risk of irreparable harm to sensitive water resources and endangered species from habitat from PHP's continued pipeline construction." Motion for Leave, ¶ 5, Dkt. 40. Inadvertent returns of the type that occurred at the Pedernales HDD, do not occur during every HDD but are a fairly normal occurrence that create ponding on the surface near the location of the drill. Second Brammer Decl., ¶ 4, Ex. A. They occur with sufficient regularity that PHP employs an "HDD Inadvertent Return Mitigation Plan" that requires the drilling contractor to maintain necessary containment equipment at the HDD site and actively monitor during drilling for signs of an inadvertent return. Letter from David Lamb, PHP, to Corps Ft. Worth Dist. at 12–14 (July 27, 2020) ("Lamb Letter"), attached here as Exhibit B; Second Brammer Decl., ¶ 7, Ex. A. The HDD Plan also requires the contractor to act quickly in response to an inadvertent return to halt the pumping of drilling fluid and contain and control it. Lamb Letter at 13, Ex. B. Drilling operations cannot resume until the return is reliably contained. *Id.*

In accordance with the HDD Plan, PHP's drilling contractor actively monitored the pilot drilling on July 25, and when the inadvertent returns were detected, the contractor acted quickly to pause the operation, and to immediately contain and recover all 90 gallons of drilling fluid involved. Second Brammer Decl., ¶¶ 4, 6–7, Ex. A. As a result, there was no risk of irreparable harm, and PHP appropriately reported to the relevant regulatory agencies that there were zero impacts to the aquifer

or any water of the United States. Second Brammer Decl., ¶ 6, Ex. A; Lamb Letter at 1–2, Ex. B. Plaintiff's declarants have provided no evidence to the contrary.[1] Furthermore, the pilot hole and the process of reaming to expand the diameter of the bore are now both complete. Second Brammer Decl., ¶ 10, Ex. A.

Second, Plaintiff's Motion is untimely. On July 24, 2020, the Court set Plaintiff's PI Motion for a hearing on July 31, 2020 and directed the parties to file "at least 24 hours before the scheduled hearing" the names of witnesses and list of exhibits, along with any objections. Dkt. 36. As Plaintiff's declarant Dr. Parker makes clear, Parker Decl., ¶ 10, Dkt. 40-1, Plaintiff was aware of the inadvertent returns at the Pedernales HDD site on the day they occurred—well before this deadline. *See also* Sierra Club, Press Release (July 27, 2020), https://www.sierraclub.org/press-releases/2020/07/kinder-morgan-spills-more-drilling-fluid-along-permian-highway-pipeline-route. Nonetheless, Plaintiff chose not to raise this information prior to or during the hearing when its claims could have been fully addressed.

Third, the allegations in Plaintiff's Motion for Leave and supplemental declarations are irrelevant to Plaintiff's pending PI Motion and its Complaint. The Corps simply does not have jurisdiction over the use of HDD to cross under the Pedernales River, Opp. at 21–22, Dkt. 30, and addressing the small inadvertent returns on July 25 did not require any work within a Corps Action Area or otherwise subject to Corps authority. Lamb Letter at 1–2, Ex. B. Furthermore, Plaintiff's

---

[1] Even if it had reached groundwater or a water of the United States (and it has not), the fluid that pooled during the inadvertent returns does not pose serious health or environmental risks. The drilling fluid was Super Gel-X, a mixture of water and a bentonite clay-based gel that is substantially the similar to the drilling fluid at issue in the Blanco River HDD incident. *See* Super Gel-X Safety Data Sheet, Lamb Letter at 6–11, Ex. B. Similar to the drilling fluid involved in the Blanco River HDD incident, the Safety Data Sheet states that "[n]o significant adverse effects are expected upon ingestion of" Super Gel-X. *Id.* at 6. Moreover, the Texas Commission on Environmental Quality ("TCEQ") has concluded that the Blanco River incident did not result in groundwater contamination that may affect a drinking water well (and that therefore would require the TCEQ to notify owners and users of private drinking water wells in the area under Texas law). TEX. WATER CODE §§ 26.406, 26.408; Second Brammer Decl., ¶ 9, Ex. A; *see also* Opp. at 22–24, Dkt. 30.

Complaint expressly disclaims that the environmental impact analysis it alleges the Corps should have conducted under the National Environmental Policy Act ("NEPA") would consider potential impacts outside the Corps Action Areas. Compl. ¶ 75 ("This NEPA analysis must be performed for the limited Corps' action verifying or permitting the water crossings and impacts on the jurisdictional waters as opposed to the entire pipeline, . . . accordingly Plaintiff seeks only that limited analysis in this claim.") (internal citation omitted).

Despite this, Plaintiff alleges that the declarations are relevant to the "imminent risk of irreparable harm from the Corps' unlawful failure to comply with NEPA before authorizing PHP [to] clear, blast, drill, trench, and construct a permanent 50-foot pipeline right of way . . . ." Motion at ¶ 7.[2] The Court should reject Plaintiff's attempts to have the last word on issues already addressed at the hearing (such as the alleged impacts from clearing, trenching, constructing the Pipeline, and maintaining the permanent right of way) or belatedly shore up deficiencies in its case. Plaintiff's submissions amount to a quasi-surreply to oral argument and are rightly disfavored. *Cf.* L.R. Cv 7(f)(1); *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (noting if reply affidavits were allowed during summary judgment, a "sur-reply affidavit would be necessary . . . and so on *ad infinitum*"); *Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999) (noting general rule against surreplies helps courts determine finality of matters and minimize "last word" battles).

---

[2] Contrary to Plaintiff's and the declarants' assertions, no blasting has occurred or is occurring as part of the Pedernales HDD activity. Parker Decl., ¶¶ 3, 7; Dkt. 40-1; Second Watson Decl., ¶ 5, Dkt. 40-2. In fact, blasting is not part of the HDD process whatsoever, and is complete along the length of the entire Pipeline. Second Brammer Decl., ¶ 11, Ex. A. Furthermore, the Service analyzed the potential impacts on golden-cheeked warblers from the use of blasting. It determined that this construction method will not increase the amount of take; rather, it will expedite construction through areas where the rock is too hard to break with conventional trenching machinery and minimize impacts and noise compared to other methods. Addendum to BiOp. at 3–5, Dkt. 10-15.

Because Plaintiff's Motion for Leave and supplemental declarations are unnecessary to "correct" the record, untimely, and irrelevant to the pending PI Motion and Complaint, the Court should deny the Motion for Leave.

Dated August 4, 2020

Respectfully submitted,

BRACEWELL LLP

/s/ W. Stephen Benesh
W. Stephen Benesh
Texas State Bar No. 02132050
111 Congress Avenue, Suite 2300
Austin, Texas 78701-4061
Telephone: (512) 494-3680
Facsimile: (800) 404-3970
Email: steve.benesh@bracewell.com

and

Ann D. Navaro (*admitted pro hac vice*)
Brittany Pemberton (*admitted pro hac vice*)
2001 M Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 828-5811
Facsimile: (800) 404-3970
Email: ann.navaro@bracewell.com
Email: brittany.pemberton@bracewell.com

**COUNSEL FOR INTERVENOR DEFENDANTS KINDER MORGAN TEXAS PIPELINE LLC AND PERMIAN HIGHWAY PIPELINE, LLC**

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on August 4, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and its attached exhibits via the Court's CM/ECF system.

                     */s/ W. Stephen Benesh*